**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMELY ABREU,** | : | |
| Plaintiff, | : | **CIVIL ACTION NO. 5:26-cv-07551** |
| v. | : | |
| **PRIMECARE MEDICAL, INC.,** | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff Emely Abreu, by and through her undersigned counsel, files this Civil Action Complaint against Defendant PrimeCare Medical, Inc., and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Emely Abreu, a Hispanic woman of Dominican national origin, worked as a Medical Assistant for Defendant PrimeCare Medical, Inc. ("PrimeCare" or "Defendant") from February 2023 until PrimeCare fired her on April 21, 2025.

2. For more than two years, Ms. Abreu's supervisors mocked her accent, used her first name as a byword for mistakes, told her to "go back to school and learn more English," and stood by while coworkers called her "the Mexican girl" and assigned her the unit's cleaning. When Ms. Abreu complained in writing, her supervisors circulated her complaint emails to coworkers, who laughed about them. PrimeCare never completed an investigation.

3. In the spring of 2025, Ms. Abreu told PrimeCare that she had a high-risk pregnancy, told her supervisor she could no longer lift paraplegic inmates, and asked Human Resources to add her pregnancy to her FMLA certification. Human Resources sent her medical

certification paperwork for her physician. Before Ms. Abreu could return it, and approximately three weeks after her disclosure, PrimeCare fired her by telephone. PrimeCare's stated reason—a comment Ms. Abreu posted on a friend's private Facebook page that did not mention PrimeCare, the facility, or any patient—is pretext.

4. Ms. Abreu brings this action under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq. ("Title VII"); the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

**PARTIES**

5. Plaintiff Emely Abreu is an adult individual who resides at 1246 3rd Street, Catasauqua, Pennsylvania 18032.

6. Defendant PrimeCare Medical, Inc. is a Pennsylvania corporation with its principal place of business at 3940 Locust Lane, Harrisburg, Pennsylvania 17109. PrimeCare contracts with county correctional facilities to provide medical services to incarcerated persons.

7. At all relevant times, PrimeCare employed Ms. Abreu at the correctional facility located at 38 N. 4th Street, Allentown, Pennsylvania 18102, the Lehigh County Jail (the "Facility").

8. At all relevant times, PrimeCare employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

9. At all relevant times, PrimeCare engaged in commerce or in an industry or activity affecting commerce and employed fifty or more employees for each working day during

each of twenty or more calendar workweeks in the current or preceding calendar year. PrimeCare is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A).

10. At all relevant times, PrimeCare employed four or more persons within the Commonwealth of Pennsylvania and is an "employer" within the meaning of the PHRA, 43 P.S. § 954(b).

11. At all relevant times, PrimeCare acted through its agents, servants, and employees, including its supervisors, managers, and Human Resources personnel, each of whom acted within the course and scope of his or her employment and in furtherance of PrimeCare's business.

**JURISDICTION AND VENUE**

12. This Court has original subject-matter jurisdiction over Plaintiff's Title VII and FMLA claims under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 2617(a)(2).

13. This Court has supplemental jurisdiction over Plaintiff's PHRA claims under 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as her federal claims and form part of the same case or controversy.

14. Venue lies in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because PrimeCare committed the unlawful employment practices alleged here in Lehigh County, Pennsylvania, which lies within the Eastern District of Pennsylvania; because a substantial part of the events giving rise to Plaintiff's claims occurred in this District; and because Plaintiff would have continued working in this District but for those unlawful practices.

15. This Court has personal jurisdiction over PrimeCare because PrimeCare is incorporated in and maintains its principal place of business in Pennsylvania and employed Plaintiff in this District.

## ADMINISTRATIVE EXHAUSTION

16. On or about June 23, 2025 Plaintiff timely filed a Charge of Discrimination against PrimeCare with the U.S. Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Pennsylvania Human Relations Commission ("PHRC"), which the EEOC docketed as Charge No. 530-2025-07347 (the "Charge").

17. On September 22, 2025, Plaintiff filed an Amended Charge alleging discrimination based on race, color, sex (pregnancy), and national origin; retaliation; and FMLA violations, and describing the facts alleged in this Complaint. Plaintiff dual-filed the Amended Charge with the PHRC.

18. Plaintiff filed the Charge and the Amended Charge within 180 days of her April 21, 2025 termination and within 300 days of the unlawful employment practices alleged here.

19. More than one year has passed since Plaintiff filed her complaint with the PHRC, and the PHRC has not resolved it. Plaintiff therefore may bring her PHRA claims in this Court. 43 P.S. § 962(c).

20. On September 2, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights on the Charge, advising her of her right to file a civil action within ninety days of receipt. A true and correct copy of the EEOC's September 2, 2026 Determination and Notice of Rights is attached as Exhibit A.

21. Plaintiff files this Complaint within ninety days of her receipt of the Determination and Notice of Rights.

22. The FMLA does not require administrative exhaustion. Plaintiff files her FMLA claims within two years of PrimeCare's last violation, and within three years of PrimeCare's willful violations. 29 U.S.C. § 2617(c).

23. Plaintiff has satisfied all administrative prerequisites and conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

### A. Ms. Abreu's Employment with PrimeCare

24. Ms. Abreu is Hispanic and Latina. She was born in the Dominican Republic, speaks Spanish as her first language, and speaks English with an accent.

25. PrimeCare hired Ms. Abreu as a Medical Assistant on or about February 22, 2023, after she completed an internship with PrimeCare.

26. As a Medical Assistant, Ms. Abreu performed initial intake screening of newly admitted inmates at the Facility, took vital signs, and completed intake forms.

27. Ms. Abreu performed her job well. Supervisors recognized her as one of the fastest and most efficient employees at completing intakes, and PrimeCare regularly assigned her to train new employees.

28. PrimeCare raised Ms. Abreu's pay from a starting rate of $16.00 per hour to $27.89 per hour at the time of her termination.

29. PrimeCare made Ms. Abreu eligible for a $10,000 retention bonus.

### B. Amanda Benner Ridicules Ms. Abreu's Accent, Name, and Appearance

30. Amanda Benner became Ms. Abreu's supervisor at the Facility during Ms. Abreu's employment. Benner is white.

31. Shortly after Benner arrived, Ms. Abreu reported to Benner that a coworker was bullying her and leaving Ms. Abreu to perform all of the unit's work. Benner laughed at Ms. Abreu, told her, "I don't understand what you say because your accent is too strong," and took no action on the complaint.

32. PrimeCare later fired that coworker—but only after the coworker confronted other employees. PrimeCare took no action when Ms. Abreu complained about the same conduct.

33. Benner repeatedly mocked Ms. Abreu's accent in front of coworkers.

34. In front of other employees, Benner told Ms. Abreu to "go back to school and learn more English."

35. Whenever any employee made a mistake, Benner announced, "What in the Emily," in front of the staff, using Ms. Abreu's first name as shorthand for an error.

36. When Ms. Abreu came to work with red hair, Benner called her "Chucky." Benner also mocked Ms. Abreu's teeth.

37. At a staff meeting attended by five or six Black employees, Benner stated, "I hate Black people."

38. After Black employees complained to Human Resources about that statement, PrimeCare transferred Benner to another PrimeCare facility. PrimeCare did not terminate Benner.

**C. PrimeCare Requires Ms. Abreu to Translate Without Compensation**

39. Translation services were not part of Ms. Abreu's job description. Nevertheless, PrimeCare regularly directed Ms. Abreu to translate for nurses, other staff members, and Spanish-speaking patients on top of her own intake duties.

40. When Ms. Abreu asked Benner for a raise to reflect her translation work, Benner laughed at her and said, "Good luck with that."

41. Ms. Abreu then asked Human Resources for additional compensation. Human Resources refused, stating that PrimeCare used a telephone translation line. PrimeCare nonetheless continued to rely on Ms. Abreu to translate.

**D. PrimeCare Assigns Ms. Abreu Cleaning Duties Because of Her Ethnicity**

42. PrimeCare expected each shift to clean the medical unit before the shift ended. Other employees did not do so.

43. Ms. Abreu regularly arrived for her shift to find dirty dishes, rooms left with bodily fluids, overflowing trash, and improperly discarded containers of urine. Ms. Abreu reported these conditions by email. PrimeCare took no corrective action.

44. Ms. Abreu cleaned up after the night, morning, and second shifts because other employees refused to clean.

45. As Ms. Abreu absorbed the cleaning, coworkers began calling her "the Mexican girl" and joking that she was "assigned" to clean.

46. On one occasion, a correctional sergeant at the Facility directed Ms. Abreu to leave the medical department and go to the garbage disposal area to clean up used, blood-soaked tampons.

47. Ms. Abreu emailed Human Resources that she would no longer clean up after others. Human Resources responded that she could not refuse, accused her of "insubordination," and told her she must "continue doing it until we figure it out."

48. Vicky Brealey, PrimeCare's Director of Nursing at the Facility ("Vicky"), singled Ms. Abreu out for discipline when areas were not clean, even though three employees worked

the night shift. Vicky yelled at Ms. Abreu about cleaning in front of others and did not yell at or discipline the other employees working the same shifts.

49. No PrimeCare policy or job description assigned cleaning duties to Ms. Abreu more than to any other employee. PrimeCare imposed those duties on Ms. Abreu because she is Hispanic.

**E. Ms. Abreu Complains, and PrimeCare Circulates Her Complaints for Ridicule**

50. After each incident described above, Ms. Abreu emailed PrimeCare Human Resources representative Adrienne Christopher, copied her supervisors, described what happened, and asked PrimeCare to investigate and correct the conduct.

51. PrimeCare told Ms. Abreu it would investigate. To Ms. Abreu's knowledge, PrimeCare never completed an investigation, never reported any outcome to her, and never took corrective action.

52. Instead, Benner and Vicky shared Ms. Abreu's complaint emails with her coworkers. Ms. Abreu repeatedly walked into rooms to find coworkers and supervisors laughing about her complaints.

53. On one occasion, Vicky yelled at Ms. Abreu and put her hands in Ms. Abreu's face in a threatening manner. Ms. Abreu reported the incident to Human Resources by email, identified coworkers who witnessed it, and later asked for an update. Human Resources never responded about any investigation.

54. Another Hispanic Medical Assistant at the Facility resigned because of the discrimination she experienced at PrimeCare. Before leaving, she emailed Human Resources, management, and staff to explain her reasons. Ms. Abreu and another coworker replied to that

email describing the discrimination and mistreatment they had experienced. PrimeCare later suspended two employees who replied to that email.

**F. Vicky Falsely Accuses Ms. Abreu of Misconduct and Disrupts Her Schedule**

55. Vicky assigned Medical Assistants duties reserved for licensed nursing staff, including detox evaluations and hands-on care of paraplegic inmates—lifting them, placing them in beds, and assisting them with showering and toileting.

56. Ms. Abreu told Vicky and Human Resources that these tasks fell outside a Medical Assistant's training, certification, and scope of practice.

57. Shortly afterward, Vicky accused Ms. Abreu of sleeping at work. Vicky claimed she had personally seen Ms. Abreu sleeping when the two worked together as Medical Assistants. Vicky and Ms. Abreu never worked together as Medical Assistants. Vicky also claimed to have video evidence.

58. Ms. Abreu asked to see the video and the time records showing that she and Vicky had worked together. Neither Vicky nor Human Resources produced either one.

59. Human Resources repeated the accusation without asking for Ms. Abreu's account, told her PrimeCare was not required to show her the evidence, admitted it had no proof, and warned her, "we just don't want this behavior to continue."

60. PrimeCare's supervisors also accused Ms. Abreu of playing on the Facility's computers during work. The Facility used shared computers without individual logins, yet supervisors blamed only Ms. Abreu for computer activity.

61. PrimeCare had arranged Ms. Abreu's night-shift schedule to accommodate her classes at Northampton Community College. In the middle of a semester, Vicky and a new

manager tried to move Ms. Abreu from the night shift to the day or evening shift, knowing she attended school.

62. When Ms. Abreu explained that she could not work those hours because of school and childcare, PrimeCare scheduled her on day shifts immediately before her night shifts, preventing her from attending classes. Human Resources told her she would have to work whatever shifts were available.

**G. Ms. Abreu Discloses a High-Risk Pregnancy and Invokes Her FMLA Rights**

63. Before 2025, PrimeCare had approved Ms. Abreu for intermittent FMLA leave for a separate serious health condition.

64. Ms. Abreu worked for PrimeCare for more than twelve months before April 2025 and, upon information and belief, worked at least 1,250 hours for PrimeCare during the twelve months preceding her request for leave.

65. Upon information and belief, PrimeCare employed fifty or more employees within seventy-five miles of the Facility, including at the other county correctional facilities it serves in eastern Pennsylvania.

66. In or around late March 2025, Ms. Abreu learned that she was pregnant and that her physician had classified the pregnancy as high-risk.

67. Ms. Abreu immediately told Vicky about her high-risk pregnancy and told Vicky that she could no longer lift paraplegic inmates.

68. Ms. Abreu also emailed PrimeCare Human Resources. In that email, she disclosed her high-risk pregnancy, provided her due date, and asked PrimeCare to add her pregnancy to her FMLA certification. Ms. Abreu explained that she did not need time off immediately but wanted FMLA protection in place in case of pregnancy complications.

69. Human Resources confirmed receipt, asked Ms. Abreu how long she expected to be out, and sent her FMLA medical certification paperwork for her physician to complete.

70. Ms. Abreu gave the certification paperwork to her physician for completion.

71. Ms. Abreu's high-risk pregnancy, and the prenatal care and potential periods of incapacity associated with it, constituted a serious health condition under the FMLA. 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.115(b), 825.120(a)(4).

72. Ms. Abreu's email provided PrimeCare notice of her need for FMLA-qualifying leave.

73. Upon information and belief, PrimeCare did not provide Ms. Abreu the eligibility, rights-and-responsibilities, or designation notices required by 29 C.F.R. § 825.300.

**H. PrimeCare Fires Ms. Abreu Three Weeks Later**

74. On April 21, 2025, approximately three weeks after Ms. Abreu disclosed her pregnancy, asked to stop lifting inmates, and requested FMLA protection, a PrimeCare Human Resources representative called Ms. Abreu and terminated her employment effective immediately.

75. The Human Resources representative stated that PrimeCare was firing Ms. Abreu because her Facebook profile listed PrimeCare as her employer and because she had commented on another person's Facebook post.

76. Ms. Abreu's Facebook profile had listed PrimeCare as her employer since she began working there more than two years earlier. No one at PrimeCare had ever objected.

77. Ms. Abreu posted the comment on a friend's private Facebook page. The comment did not name PrimeCare or the Facility, did not identify any inmate or patient, and disclosed no confidential, proprietary, or protected health information.

78. When Ms. Abreu tried to explain the content of the comment, the Human Resources representative told her, “I don’t care about that. I just called you to let you know that you are fired.”

79. The same day, PrimeCare disabled Ms. Abreu’s work email account, cutting off her access to the complaint emails she had sent to Human Resources and management.

80. Other PrimeCare employees listed PrimeCare as their employer on their social media profiles. PrimeCare did not discipline them.

81. PrimeCare never gave Ms. Abreu a copy of its policy manual. PrimeCare kept the manual in a drawer in the medical department, did not permit employees to read it during work hours, and did not permit them to take a copy home.

82. After the termination call, Ms. Abreu repeatedly emailed and left voicemails for Human Resources requesting a termination letter because PrimeCare still listed her as an active employee, which blocked her applications for health coverage and public assistance. Human Resources did not respond.

83. Approximately two weeks after the call, PrimeCare sent Ms. Abreu a letter stating that it had terminated her for violating its Code of Conduct, citing policy “PCM VII A-302v02.”

84. PrimeCare did not warn, suspend, or otherwise progressively discipline Ms. Abreu before firing her, and did not offer her a transfer to another facility.

85. By contrast, PrimeCare responded to Benner’s statement at a staff meeting that she “hate[s] Black people” by transferring her to another PrimeCare facility, where she kept her job.

86. PrimeCare had tolerated Ms. Abreu's complaints of discrimination for more than a year. PrimeCare fired her only after she disclosed her high-risk pregnancy, asked to stop lifting inmates, and invoked her FMLA rights.

87. PrimeCare's stated reason for terminating Ms. Abreu is false and pretextual. The close timing between Ms. Abreu's pregnancy disclosure and FMLA request and her termination; PrimeCare's years-long acceptance of her Facebook profile; the innocuous content of her comment; Human Resources' refusal to hear her explanation; PrimeCare's failure to discipline other employees with identical profiles; and PrimeCare's lenient treatment of Benner each demonstrate that PrimeCare fired Ms. Abreu because of her pregnancy, her request for FMLA leave, her race, and her national origin.

88. PrimeCare fired Ms. Abreu approximately two months before her retention period ended, causing her to lose approximately fifty percent of her $10,000 retention bonus.

**I. Ms. Abreu's Damages**

89. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has lost wages, benefits, bonus compensation, and other terms and privileges of employment, and she will continue to suffer those losses.

90. Ms. Abreu lost her employer-provided health coverage while pregnant. She has struggled to find new employment while pregnant and caring for her children.

91. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered emotional distress, humiliation, embarrassment, anxiety, and damage to her reputation.

92. PrimeCare acted intentionally, with malice, and with reckless indifference to Ms. Abreu's federally protected rights.

**COUNT I**
**TITLE VII — RACE AND NATIONAL ORIGIN DISCRIMINATION**
**42 U.S.C. § 2000e-2(a)**

93. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

94. Ms. Abreu is a member of protected classes based on her race (Hispanic/Latina) and national origin (Dominican).

95. Ms. Abreu was qualified for her position and performed it satisfactorily.

96. PrimeCare subjected Ms. Abreu to adverse employment actions, including by terminating her employment; assigning her cleaning duties it did not impose on non-Hispanic employees; disciplining and reprimanding her for conditions for which it did not hold non-Hispanic employees responsible; and requiring her to perform translation work without compensation.

97. PrimeCare took these actions because of Ms. Abreu's race and national origin, under circumstances giving rise to an inference of discrimination, including her supervisors' repeated ridicule of her accent, coworkers' references to her as "the Mexican girl," and PrimeCare's more lenient treatment of Benner, a white supervisor who announced at a staff meeting that she hates Black people.

98. PrimeCare's stated reasons for its actions are pretext for discrimination.

99. PrimeCare acted with malice or with reckless indifference to Ms. Abreu's federally protected rights.

100. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

**COUNT II**
**TITLE VII — SEX (PREGNANCY) DISCRIMINATION**
**42 U.S.C. §§ 2000e(k), 2000e-2(a)**

101. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

102. Title VII prohibits discrimination "because of sex," which includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

103. Ms. Abreu was pregnant, and PrimeCare knew she was pregnant, when it terminated her employment.

104. Ms. Abreu was qualified for her position.

105. PrimeCare terminated Ms. Abreu approximately three weeks after she disclosed her high-risk pregnancy and told PrimeCare she could no longer lift paraplegic inmates.

106. PrimeCare treated Ms. Abreu less favorably than non-pregnant employees similar in their ability or inability to work, including by terminating her for maintaining a social media profile that PrimeCare tolerated from non-pregnant employees and that it had tolerated from Ms. Abreu before her pregnancy.

107. PrimeCare's stated reason for terminating Ms. Abreu is pretext for pregnancy discrimination.

108. PrimeCare acted with malice or with reckless indifference to Ms. Abreu's federally protected rights.

109. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

**COUNT III**
**TITLE VII — HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2(a)**

110. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

111. PrimeCare, through its supervisors and employees, subjected Ms. Abreu to intentional harassment because of her race and national origin.

112. The harassment included supervisors mocking Ms. Abreu's accent in front of coworkers; Benner telling her to "go back to school and learn more English"; Benner using "What in the Emily" as a public byword for mistakes; Benner calling her "Chucky" and mocking her teeth; coworkers calling her "the Mexican girl" and joking that she was "assigned" to clean; PrimeCare forcing her to clean up after every shift, including bodily fluids, urine, and used tampons; supervisors singling her out for public reprimands; Vicky putting her hands in Ms. Abreu's face; and supervisors circulating her written complaints of discrimination for coworkers to ridicule.

113. The harassment was severe or pervasive. It occurred regularly over more than two years, took place in front of Ms. Abreu's coworkers, and was perpetrated or encouraged by her supervisors.

114. The harassment detrimentally affected Ms. Abreu and would detrimentally affect a reasonable Hispanic person of Dominican national origin in her position.

115. PrimeCare is liable for the harassment. Ms. Abreu's supervisors, Benner and Vicky, perpetrated much of it, and the harassment culminated in tangible employment actions, including Ms. Abreu's termination. PrimeCare also knew of the harassment through Ms. Abreu's repeated written complaints to Human Resources and failed to take prompt and appropriate remedial action.

116. PrimeCare acted with malice or with reckless indifference to Ms. Abreu's federally protected rights.

117. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

**COUNT IV**
**FMLA — INTERFERENCE**
**29 U.S.C. § 2615(a)(1)**

118. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

119. Ms. Abreu was an "eligible employee" under the FMLA. 29 U.S.C. § 2611(2).

120. PrimeCare was an "employer" under the FMLA. 29 U.S.C. § 2611(4).

121. Ms. Abreu was entitled to FMLA leave for her high-risk pregnancy, prenatal care, any period of pregnancy-related incapacity, and the birth of her child. 29 U.S.C. § 2612(a)(1)(A), (D).

122. Ms. Abreu gave PrimeCare notice of her intention to take FMLA leave by emailing Human Resources, disclosing her high-risk pregnancy and due date, and asking PrimeCare to add her pregnancy to her FMLA certification.

123. PrimeCare interfered with, restrained, and denied Ms. Abreu's exercise of and attempts to exercise her FMLA rights by terminating her employment before she could return her medical certification and before she could take the leave to which she was entitled.

124. PrimeCare's interference prejudiced Ms. Abreu. She lost her job, her wages, her health coverage, and the job-protected leave the FMLA guaranteed her for the birth of her child.

125. PrimeCare's violations were willful.

126. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered lost wages, salary, employment benefits, and other compensation, and is entitled to relief under 29 U.S.C. § 2617, including liquidated damages.

**COUNT V**
**FMLA — RETALIATION**
**29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c)**

127. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

128. Ms. Abreu invoked her right to FMLA-qualifying leave by requesting that PrimeCare add her high-risk pregnancy to her FMLA certification and by beginning the certification process.

129. PrimeCare took an adverse employment action against Ms. Abreu by terminating her employment.

130. PrimeCare terminated Ms. Abreu because she invoked her FMLA rights. The approximately three weeks between her request and her termination, the pretextual reason PrimeCare gave, and PrimeCare's failure to discipline other employees for the same conduct establish a causal connection.

131. PrimeCare's violations were willful.

132. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered lost wages, salary, employment benefits, and other compensation, and is entitled to relief under 29 U.S.C. § 2617, including liquidated damages.

**COUNT VI**
**PHRA — RACE, ANCESTRY, AND NATIONAL ORIGIN DISCRIMINATION**
**43 P.S. § 955(a)**

133. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

134. The PHRA prohibits an employer from discharging or otherwise discriminating against an employee with respect to compensation, tenure, terms, conditions, or privileges of employment because of race, ancestry, or national origin. 43 P.S. § 955(a).

135. For the reasons alleged in Count I, PrimeCare discriminated against Ms. Abreu because of her race, ancestry, and national origin, including by terminating her employment.

136. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

**COUNT VII**
**PHRA — SEX (PREGNANCY) DISCRIMINATION**
**43 P.S. § 955(a)**

137. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

138. The PHRA prohibits an employer from discharging or otherwise discriminating against an employee because of sex, which includes discrimination because of pregnancy. 43 P.S. § 955(a).

139. For the reasons alleged in Count II, PrimeCare discriminated against Ms. Abreu because of her sex, including her pregnancy, by terminating her employment.

140. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

**COUNT VIII**
**PHRA — HOSTILE WORK ENVIRONMENT**
**43 P.S. § 955(a)**

141. Plaintiff incorporates paragraphs 1 through 92 as though fully set forth herein.

142. For the reasons alleged in Count III, PrimeCare subjected Ms. Abreu to a hostile work environment because of her race, ancestry, and national origin, in violation of 43 P.S. § 955(a).

143. As a direct and proximate result of PrimeCare's conduct, Ms. Abreu has suffered the damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Emely Abreu respectfully requests that this Court enter judgment in her favor and against Defendant PrimeCare Medical, Inc., and award the following relief:

(a) A declaration that PrimeCare violated Title VII, the FMLA, and the PHRA;

(b) Back pay, lost benefits, and lost bonus compensation, including the forfeited portion of Plaintiff's retention bonus, with prejudgment interest;

(c) Reinstatement or, in the alternative, front pay;

(d) Compensatory damages for emotional distress, humiliation, and other non-economic harm under Title VII and the PHRA;

(e) Punitive damages under Title VII, 42 U.S.C. § 1981a(b)(1);

(f) Liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii);

(g) Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 2617(a)(3), and 43 P.S. § 962(c.2);

(h) An additional amount to offset any adverse tax consequences of a lump-sum award;

(i) Pre-judgment and post-judgment interest; and

(j) Such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Ethan P. Underwood., Esq.*
Ethan P. Underwood, Esq.
Andrew Lacy, Jr., Esq.
**THE LACY EMPLOYMENT LAW FIRM LLC**
3675 Market Suite, Suite 200
Philadelphia, PA 19104
(t) 412-301-3908
Ethan@lacylegal.com
Andrew.lacy@lacylegal.com

Dated: September 30, 2026

*Counsel for Plaintiff*